# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| GILBERTO MARTINEZ, JR., | ) | CASE NO. 1:23-CV-1877-JGC |
| Plaintiff, | ) | |
| | ) | U.S. DISTRICT JUDGE |
| v. | ) | JAMES G. CARR |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | U.S. MAGISTRATE JUDGE |
| SECURITY, | ) | JENNIFER DOWDELL ARMSTRONG |
| | ) | |
| Defendant, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

## I.      INTRODUCTION

Plaintiff, Gilberto Martinez, Jr. ("Mr. Martinez"), seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner")[1] denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (ECF No. 1.) This matter is before me pursuant to 42 U.S.C. §§ 405(g) and Local Rule 72.2(b). (*See* ECF non-document entry dated September 26, 2023). For the reasons set forth below, I RECOMMEND that the Court AFFIRM the Commissioner's final decision DENYING Mr. Martinez's applications for DIB and SSI.

## II.      PROCEDURAL HISTORY

Mr. Martinez filed a prior application for DIB and SSI, which an ALJ denied in June 2019. (Tr. 16.)[2] On April 7, 2021, Mr. Martinez filed his current applications for DIB and SSI, alleging a disability onset date of May 30, 2019. (Tr. 234, 241.) His application related to degenerative disc

---

[1] On December 20, 2023, Martin O'Malley became the Commissioner of Social Security.

[2] The administrative transcript ("Tr.") appears at ECF No. 5 on CM/ECF. All page number references to the administrative transcript herein are to the Bates numbers on the bottom right-hand corner. All other record references are to the electronically stamped CM/ECF document ("ECF No.") and PageID# rather than any internal pagination.

1

disease, a pinched nerve in his left leg and foot, "bad neck," "bad back," anxiety, and depression. (Tr. 260.) The ALJ's decision found that Mr. Martinez had severe impairments of degenerative disc disease, cervical/lumbago with sciatica,[3] vertigo with dizziness and syncope, depression, and anxiety. (Tr. 19.) Mr. Martinez's applications were denied initially and upon reconsideration. (Tr. 147, 152, 159, 164.)

An administrative law judge ("ALJ") held a hearing on September 8, 2022, where Mr. Martinez, represented by counsel, and a vocational expert ("VE") testified. (Tr. 36-72.) The ALJ issued a written decision on October 5, 2022, finding that Mr. Martinez was not disabled within the meaning of the Social Security Act. (Tr. 16-30.) The Commissioner's decision became final when the Appeals Council declined further review on July 27, 2024. (Tr. 1-6.) Mr. Martinez filed a Complaint on September 26, 2023, challenging the Commissioner's final decision. (ECF No. 1.) He raises three assignments of error:

(1) The ALJ committed harmful error when he applied the wrong standard of review when he adopted the findings of the prior Administrative Law Judge.

(2) The ALJ erred when he improperly assessed the opinions of the treating source and failed to support his conclusion with substantial evidence.

(3) The ALJ's finding that Plaintiff could perform work at the light level of exertion was not supported by substantial evidence.

(ECF No. 6, PageID#564.)

### III.     BACKGROUND

#### A.  **Personal, Educational, and Vocational Information**

Mr. Martinez was born in 1971, and he was 51 years old at the time of the administrative hearing. (Tr. 38, 42.) He lives with his fiancée, and he has one son who resides with him every

---

[3] Lumbago is a descriptive term for mid and lower back pain. *See Lumbago*, Stedman's Medical Dictionary 514330 (Nov. 2014). Sciatica is pain in the lower back and hip radiating down the back of the thigh into the leg. *See Sciatica*, Stedman's Medical Dictionary 801240 (Nov. 2014).

other week. (Tr. 43.) He has a driver's license and a GED. (Tr. 45-46.) His past relevant work was employment as an assembler, forklift operator, and machine operator. (Tr. 28.)

### B. **Relevant Non-Medical/Medical Opinion Evidence**

#### 1. *State Agency Opinions*

##### a. **State Agency Physicians**

In June 2021, Leon Hughes, M.D., reviewed the record at the initial level of consideration and adopted the RFC findings from the prior 2019 ALJ decision. (Tr. 102.) This RFC found that Mr. Martinez could perform work at the light exertional level except that he could never climb ladders; occasionally climb ramps and stairs; occasionally stoop, kneel, crouch, and crawl; occasionally use his bilateral lower extremities for operation of foot controls; and frequently use his bilateral upper extremities for reaching handling and fingering. (*Id.*) This RFC also found that Mr. Martinez must avoid all exposure to hazards, such as dangerous moving machinery, commercial driving, and unprotected heights. (*Id.*)

In February 2022, Gary Hinzman, M.D., reviewed the record at the reconsideration level. Dr. Hinzman noted that, in accordance with the requirements of AR 98-4, the RFC findings from the prior June 2019 ALJ decision and the current findings had been reviewed. (Tr. 119.) Dr. Hinzman observed that there were changed circumstances affecting the findings and that the RFC would not be adopted "because of new and material findings of neck and right shoulder impairments," which resulted in additional manipulative limitations after that date. (*Id.*) Dr. Hinzman opined that Mr. Martinez could perform work at the light exertional level except that he can stand and/or walk six hours in an eight hour workday; can sit for about six hour in an eight hour workday; can never climb ladders, ropes, or scaffolds; can frequently balance; can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; can occasionally lift in front

or laterally with the right upper extremity; must avoid all unprotected heights and heavy machinery; and cannot engage in commercial driving. (Tr. 117-18.)

### b.  State Agency Psychologists

In August 2021, Lisa Foulk, Psy.D., reviewed the record at the initial level of consideration and found that Mr. Martinez did not have a severe mental impairment. (Tr. 100.) Dr. Foulk adopted the findings from the prior 2019 ALJ decision. (*Id.*) In February 2022, Courtney Zeune, Psy.D., reviewed the record at the reconsideration level. Unlike Dr. Foulk, Dr. Zeune found that. Mr. Martinez had a severe mental impairment that limited him to simple and routine tasks with infrequent changes and reduced social interaction. (Tr. 120-22.)

### 2.  *Mark Nederer, MD*

### a.  Mental Impairment Questionnaire

In August 2021, Dr. Nederer, Mr. Martinez's family physician, completed a Mental Impairment Questionnaire.[4] (Tr. 490-91.) Dr. Nederer indicated that Mr. Martinez had general anxiety disorder that made him shaky and have rigid speech. (Tr. 490.) The prognosis for this condition was fair. (*Id.*) Dr. Nederer opined that Mr. Martinez was unable to meet competitive standards[5] in his abilities to carry out detailed instructions; maintain attention and concentration for extended periods; sustain an ordinary routine without special supervision; work in coordination with or in proximity to others; remember locations and work-like procedures; understand and remember very short and simple instructions; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; respond appropriately to

---

[4] The ALJ mistakenly indicates that this opinion was from August 2022. (Tr. 25.)
[5] The Mental Impairment Questionnaire defines "unable to meet competitive standards" to mean that the patient "cannot satisfactorily perform this activity independently, appropriately, effectively and on a sustained basis in a regular work setting." (Tr. 490.)

changes in the work setting; be aware of normal hazards and take appropriate precautions; and set realistic goals or make plans independently of others. (Tr. 490-91.)

Dr. Nederer also opined that Mr. Martinez had no useful ability to function[6] in his abilities to manage regular attendance and be punctual within customary tolerances; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; understand and remember detailed instructions; interact appropriately with the general public; and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (*Id.*) Dr. Nederer further opined that Mr. Martinez was seriously limited but not precluded[7] in his ability to perform activities within a schedule. (Tr. 490.) Dr. Nederer additionally opined that Mr. Martinez's abilities to carry out very short and simple instructions, maintain socially appropriate behavior, and adhere to basic standards of neatness and cleanliness was limited but satisfactory. (Tr. 490-91.) Finally, Dr. Nederer opined that due to his impairments Mr. Martinez would be absent five to six days per week and off-task 80% of the workday. (Tr. 491.)

### b.  Physical Medical Source Statement

In March 2022, Dr. Nederer completed a Physical Medical Source Statement. (Tr. 473-76.) Dr. Nederer indicated that Mr. Martinez had cervical spondylosis, with fair prognosis with neck pain, right shoulder pain, numbness in his right shoulder that was weakness, decreased range of motion, and increased pain with activity. (Tr. 473.) Dr. Nederer reported Mr. Martinez had pain radiating from the base of his neck to his right shoulder and right arm and increased neck pain with activity. (*Id.*) Dr. Nederer indicated that these findings were substantiated by an abnormal MRI

---

[6] The Mental Impairment Questionnaire defines "no useful ability function" to mean that the patient "cannot perform th[e] activity in a regular work setting." (Tr. 490.)
[7] The Mental Impairment Questionnaire defines "seriously limited, but not precluded" to mean that the patient is "limited in their ability to perform [the] activity 15% of [the] time." (Tr. 490.)

that noted cervicalgia. (*Id.*) Dr. Nederer opined that Mr. Martinez was incapable of even low stress work, would be off task 25% or more of the workday, and would be absent more than four days per month. (*Id.*)

### C. Relevant Medical Evidence

Dr. Nederer primarily treated Mr. Martinez for his physical and mental health issues. On July 31, 2018, Mr. Martinez reported vertigo with neck pain and numbness and tingling in his left hand, and Dr. Naderer assessed him with degenerative disc disease. (Tr. 324.) An MRI of Mr. Martinez's brain was normal. (Tr. 326.)

On February 21, 2019, Mr. Martinez attended a follow-up appointment with Dr. Nederer regarding his neck pain and anxiety. (Tr. 339.) Mr. Martinez reported that he continued to have pain at the base of his neck and into his top shoulders. (*Id.*) He stated that the pain radiates into his bilateral arms and hands. (*Id.*) He also experienced numbness and tingling in his hands. (*Id.*) Imaging in February 2019 showed narrowing with nerve impingement, and Mr. Martinez was referred to a neurosurgeon. (Tr. 340.) Mr. Martinez was assessed for cervical spondylosis with radiculopathy on April 25, 2019. (Tr. 332.)

Mr. Martinez attended a follow-up appointment with Dr. Nederer for his neck pain and anxiety on June 18, 2019. He reported that he continued to have severe pain in his neck and across the top of his shoulders, and this pain radiated down his arms and into his hands. (Tr. 428.) He reported that his anxiety worsened. (*Id.*) Dr. Naderer adjusted Mr. Martinez's medications for anxiety. (Tr. 429.) Mr. Martinez continued to see Dr. Naderer every three months for his physical and mental health conditions. By December 18, 2019, Mr. Martinez reported increased radicular symptoms stemming from his neck pain but stable anxiety. (Tr. 424-25.) He was not as worried,

nervous, moody, or irritable since the medication change. (Tr. 424.) Dr. Naderer made further adjustments to Mr. Martinez's medications to address his neck issue. (Tr. 425.)

Mr. Martinez returned to Dr. Naderer on May 11, 2020. At that time, Mr. Martinez's pain was tolerable with medication and his anxiety was stable. (Tr. 422.) Mr. Martinez was able to stay active and complete his activities of daily living. (*Id.*) Similarly, at an appointment on August 11, 2020, Mr. Martinez was able to stay active and complete his activities of daily living. (Tr. 420.) He reported that using Neurontin daily and Percocet when necessary helped with his pain. (*Id.*) His anxiety was stable, and was not as stressed, overwhelmed, moody, or irritable. (*Id.*) Dr. Naderer noted that Mr. Martinez's mood was controlled with medication. (Tr. 421.)

On October 21, 2020, Mr. Martinez met with Daniel Elskens, M.D., for his neck pain. On examination, Mr. Martinez had "relatively well-preserved range of motion of his neck," shoulder discomfort but no radicular component, no tenderness to palpation, and intact reflexes and sensation. (Tr. 347-48.) He did, however, display positive symptoms for Tinel's Sign[8] in his left hand. (Tr. 348.) Dr. Elskens reviewed x-rays and an MRI, which showed two-level disc disease with moderate stenosis at one level but no cord compression. (*Id.*) Dr. Elskens recommend an initial conservative approach, with physical therapy and possible epidural steroid injections. (*Id.*) Following this appointment, Mr. Martinez completed ten sessions of physical therapy. The treatment notes from Mr. Martinez's October 29, 2020, physical therapy session indicated that his cervical extension was reduced by 50% and his upper limb mobility of his bilateral upper extremity median and radial nerves were moderately reduced. (Tr. 388.) At his discharge evaluation on

---

[8] Tinel's sign is a tingling or "pins and needles" feeling one gets when a healthcare provider taps on the skin over a nerve. It may be an indicator of nerve compression or damage where the healthcare provider is tapping. *See Tinel's Sign*, CLEVELAND CLINIC, https://my.clevelandclinic.org/health/diagnostics/22662-tinels-sign (last visited July 17, 2024).

January 22, 2021, Mr. Martinez rated his neck pain as 2/10, reported an 80 percent overall improvement, and indicated he no longer had active radiculopathy. (Tr. 361-62.)

Mr. Martinez attended a follow-up appointment with Dr. Naderer on March 22, 2021. Mr. Martinez reported continued pain at the base of his neck and into the top of his shoulders, with radiating pain down his right arm and into his right hand, as well as numbness and tingling in hand. (Tr. 416.) He reported that his pain improved with physical therapy and use of a TENS unit despite the pain returning when he goes home. (*Id.*) Percocet provided mild relief. (*Id.*) He had stable anxiety, and he was not as nervous, worried, moody, or irritable. (*Id.*) Mr. Martinez had decreased range of motion in his neck and some increased pain in his left leg with straight leg raising at an appointment on March 31, 2021. (Tr. 349.)

Mr. Martinez saw Dr. Elskens on April 6, 2021, and requested additional physical therapy. (Tr. 349.) He presented with neck pain and numbness down the back of his left leg. (*Id.*) Mr. Martinez restarted physical therapy for both his neck and back. (Tr. 358.) At physical therapy, he reported difficulties with walking, standing, functional mobility, and sleeping at night. (Tr. 352.)

Mr. Martinez met with Dr. Naderer at a June 21, 2021, appointment. He reported that taking Neurontin and Percocet as needed helped with pain. (Tr. 414.) His anxiety was stable, and he was not as moody or irritable. (*Id.*) He reported that taking Celexa daily and Xanax as needed was helpful. (*Id.*)

Mr. Martinez underwent a consultative psychological examination with Thomas Evans, PhD, on July 26, 2021. (Tr. 394-98.) Mr. Martinez indicated that he had been taking the same medications for four years and had never been hospitalized for psychiatric reasons or engaged in counseling. (Tr. 395.) Mr. Martinez reported that he had a driver's license and was able to drive. (*Id.*) Mr. Martinez also reported that his uncle does his grocery shopping and manages his finances,

but Mr. Martinez performs his own household choirs. (*Id.*) Dr. Evans observed that Mr. Martinez was cooperative and friendly, with adequate eye contact and normal speech. (Tr. 395-96.) He was "mildly anxious" throughout the evaluation but displayed normal cognitive functioning and adequate insight and judgment. (Tr. 396.) He displayed good attention and concentration and denied any difficulties getting along with coworkers or bosses. (Tr. 397.)

Mr. Martinez attended an appointment with Dr. Naderer on September 21, 2021. Mr. Martinez reported that he had pain in his neck and shoulder, which radiated down his left arm and into his hands and was accompanied by numbness and weakness in his hands. (Tr. 412.) He was no longer in physical therapy but reported that it was helpful, and he wanted to try again. (*Id.*) His anxiety was stable, and he reported his medications were helping, that he was not as moody or irritable, and his mood was controlled. (Tr. 412-13.) Mr. Martinez had decreased range of motion and was not able to raise or extend his arm past 90 degrees at a November 15, 2021, appointment. (Tr. 409.) He had severe weakness in and difficulty lifting with his right arm. (*Id.*) A shoulder x-ray revealed mild degenerative changes of the AC joint. (Tr. 411.) Dr. Naderer prescribed prednisone, and Mr. Martinez restarted physical therapy in December 2021. (Tr. 410, 458.)

Mr. Martinez reported continued pain in the back of his neck and in his shoulders, pain down his arm, weakness in his right arm, and frequent numbness and tingling at an appointment on December 21, 2021. (Tr. 488.) Oxycodone helped to control the pain. (*Id.*) He also reported that physical therapy was helpful. (*Id.*) He had decreased range of motion, as well as weakness and pain in using his right arm away from the body. (*Id.*) He also reported worsened anxiety, severe stress, moodiness, and irritability. (Tr. 488.) He further reported that his anxiety medication was not providing much relief. (*Id.*)

Mr. Martinez returned to Dr. Naderer on March 21, 2022. He reported that he had pain in his neck and shoulders accompanied with radiating pain in his arms, weakness in his right arm, and frequent numbness and tingling. (Tr. 486.) He had decreased range of motion and weakness, but he reported physical therapy was helping. (*Id.*) Percocet continued to help control his pain. (*Id.*) He reported worsening anxiety and stress, and his mental health medication dosage was increased. (Tr. 486-87.)

Mr. Martinez presented for a follow up appointment with Dr. Naderer on June 20, 2022. He reported that physical therapy was helpful, but he still had some problems. (Tr. 483.) He reported oxycodone helped control his pain, though he reported feeling stressed and overwhelmed (*Id.*) A neck MRI from June 28, 2022, revealed mild to moderate degenerative disc disease with some stenosis at two levels. (Tr. 485.) Mr. Martinez restarted physical therapy in July 2022. (Tr. 505.)

At a July 19, 2022, physical therapy appointment, Mr. Martinez was reported to have "ok" mobility, could go outside alone, and was usually mobile without a gait aid. (Tr. 506.) Mr. Martinez reported being able to walk up to a quarter mile, sit up to one hour, and stand up to one hour. (Tr. 508.)

**D.  Relevant Hearing Testimony and Statements**

**1.  *Mr. Martinez's Function Report***

Mr. Martinez reported that he was unable to work due to pain while standing, numbness in his arms, dizziness, balance issues, feeling overwhelmed when around people, rage, and panic. (Tr. 267.) He stated that he cares for his son and performs "dad duties." (Tr. 268.) He indicated that he is able to dress, groom and feed himself, and use the toilet. (*Id.*) However, he reported that he has difficulty bathing because he loses balance in the shower and must be careful shaving

10

because he experiences "shakes." (*Id.*) He requires reminders to take his medication. (Tr. 269.) Someone else cooks for him. (*Id.*) He reported that he was able to drive. (Tr. 270.) He shops once to twice a month for food but indicated that he must "go in and out" and that he "can[no]t be in there [for] long." (*Id.*)

Mr. Martinez reported that panic attacks, aches, and pain have prevented him from doing all activities. (Tr. 271.) He reported that his conditions affect his ability to lift, bend, stand, walk, sit, climb chairs, complete tasks, use his hands, and get along with others. (Tr. 272.) He stated that he cannot walk far because it "hurts all the time." (*Id.*) When asked how far he could walk before needing to stop and rest, Mr. Martinez reported that he walks "as little as poss[ible]." (*Id.*) He reported that his concentration gets worse every year and he forgets spoken instructions, but he also reported that he can follow written instruction "ok" and gets along well with authority figures. (*Id.*) He reported that he does not handle stress and changes in routine well. (Tr. 273.) Finally, he reported that he uses an unprescribed cane. (*Id.*)

### 2. *Mr. Martinez's Hearing Testimony*

Mr. Martinez testified that a new issue that prevented him from working since the prior June 2019 ALJ decision was numbness in his legs, difficulty extending his right arm, and difficulty lifting his right arm above his ahead. (Tr. 48.) He also testified that he was experiencing numbness in his fingertips. (*Id.*) He stated that he cannot sit or stand too long because it is uncomfortable, and the pain will wake him up in the middle of the night. (Tr. 49.) He takes antidepressants for his mental health and testified that these medications are helpful. (*Id.*) His family doctor increased his antidepressant dosage because his panic attacks grew worse. (*Id.*)

Mr. Martinez takes meclizine for his vertigo. (Tr. 50.) He testified that his medical provider intended to increase the dosage for his meclizine because he was experiencing dizziness while

11

sitting on the couch and watching TV. (*Id.*) He explained that when he experiences a "dizzy spell" while watching TV it is like "looking through a kaleidoscope." (*Id.*)

Mr. Martinez testified that the side effect of his medications is sleepiness. (Tr. 51.) He occasionally has trouble sleeping and sleeps five hours a night. (*Id.*) He stated that he can shower, but he cannot sit in a bathtub because it "flares [his tailbone] right up." (Tr. 52.) He testified that he sometimes has problems getting dressed. (Tr. 52.) He explained that some days he has no issues but other days he is slower at using buttons and zippers. (Tr. 52-53.) Specifically, he has problems with dressing when the fingers on his right hand become cramped. (Tr. 63.) His fiancée cooks and does the dishes. (Tr. 53.) He stated that he may be able to take care of cooking and dishes, but he has issues leaning over and reaching. (*Id.*) He stated that he has barely been able to do household chores over the past year. (*Id.*) He shops for groceries "[e]very now and again," but reaching for heavy items puts a strain on him and results in him being barely able to move the next day. (Tr. 54.)

Mr. Martinez testified that he stopped worked due to vertigo. (*Id.*) He can drive about 25 minutes (Tr. 56.) He requires help opening things from the refrigerator. (Tr. 61.) He reported issues concentrating due to feeling tired. (Tr. 62.)

### 3. *Vocational Expert's Hearing Testimony*

The ALJ first asked the VE whether an individual with Mr. Martinez's age, education, and experience could perform work at the light exertional level if he can never climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs; can occasionally stoop, kneel, crouch, and crawl; can occasionally operate foot controls bilaterally; can frequently reach, handle, and finger with the bilateral upper extremities; and must avoid all exposure to hazards such as dangerous moving machinery, commercial driving, and unprotected heights. (Tr. 65.) The VE opined that the

individual could perform work as a marker, inspector and hand packager, and routing clerk. (Tr. 65-66.)

The ALJ then asked whether an individual with the same limitations from the first hypothetical except limited to occasionally reaching in front and laterally reaching with the non-dominant upper extremity and no overhead reaching with the non-dominant upper extremity could perform work. (Tr. 66.) The VE opined that this individual could perform work as a stock checker, office helper, and sorter. (*Id.*)

The ALJ further asked the VE whether the individual from the second hypothetical could perform work if also limited to occasionally handling and fingering. (Tr. 66.) The VE opined that the jobs from the second hypothetical would be eliminated with these limitations. (Tr. 67.)

The ALJ also asked whether an individual with the same limitations from the first hypothetical could perform work if he was instead limited to working at the sedentary exertional level. (*Id.*) The VE opined that the individual could perform work as an inspector, sorter, assembler, and document preparer. (*Id.*) The ALJ then asked whether the same individual could perform work if also limited to occasionally reaching in front and laterally with the right upper extremity and no overhead reaching with the right upper extremity. (Tr. 68.) The VE opined that this individual could perform work as a callout operator and surveillance system monitor. (*Id.*) The VE stated that for these jobs, an individual would receive two 15-minute breaks and a 30-minute break for a meal. (*Id.*) The VE also opined that an employer's ordinary tolerance for absenteeism would be one to two absences in a month but not on a consistent basis (*i.e.*, month to month). (*Id.*) The VE further opined that an employee could be off task no more than 10% of the time in addition to the job's standard breaks. (*Id.*)

13

IV.     ALJ DECISIONS IN 2019 AND 2022

Mr. Martinez filed a prior application for DIB and SSI, which an ALJ denied in June 2019.
(Tr. 16.) In the June 2019 decision, the ALJ found that Mr. Martinez had the residual functional
capacity ("RFC") to perform work at the light exertional level except he was limited to no climbing
of ladders, ropes, or scaffolds; occasional climbing of ramps and stairs; occasional stooping,
kneeling, crouching, and crawling; occasional use of the bilateral lower extremities for operation
of foot controls; and frequent use of the bilateral upper extremities for reaching, handling, and
fingering. (Tr. 82.) In addition, the ALJ determined that Mr. Martinez must avoid all exposure to
hazards, *i.e.*, dangerous moving machinery, commercial driving, and unprotected heights). (*Id.*)

Mr. Martinez filed another application for DIB and SSI, which an ALJ denied in October
2022. In the October 2022 decision, the ALJ first found that Mr. Martinez met the insured status
requirements of the Social Security Act through December 31, 2022. (Tr. 19.) The ALJ then found
that Mr. Martinez had not engaged in substantial gainful activity since May 30, 2019, the alleged
disability onset date. (*Id.*) The ALJ further found that Mr. Martinez has the following severe
impairments: degenerative disc disease; cervical/lumbago with sciatica; vertigo with dizziness and
syncope; depression; and anxiety. (*Id.*) However, the ALJ found that none of these impairments—
individually or in combination—met or medically equaled the severity of a listed impairment in
20 CFR Part 404, Subpart P, Appendix 1. (Tr. 19-22.) The ALJ noted that there were current
records containing new and material evidence regarding Mr. Martinez's severe impairments,
which "warrant[e]d changes in [his] residual functional capacity." (Tr. 22.)

The ALJ determined that Mr. Martinez has the RFC to perform work at the light exertional
level except he is limited to no climbing of ladders, ropes, or scaffolds; occasional climbing of
ramps and stairs; occasional stooping, kneeling, crouching, and crawling; occasional use of the

14

bilateral lower extremities for operation of foot controls; frequent use of the bilateral upper extremities for reaching, handling, and fingering; and occasional reaching in front and laterally with the right non-dominant upper extremity and frequently with the left upper extremity. (*Id.*) The ALJ also determined that Mr. Martinez must avoid all exposure to hazards such as dangerous moving machinery, commercial driving, and unprotected heights, and can understand, remember, and carry out simple instructions. (*Id.*) The ALJ then determined that Mr. Martinez is unable to perform his past relevant work. (Tr. 28.) The ALJ further determined that the transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Mr. Martinez is not disabled regardless of whether or not he has transferable job skills. (Tr. 29-30.) The ALJ found that, considering Mr. Martinez's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Mr. Martinez can perform, including employment as a stock checker, office helper, and sorter. (Tr. 29.) Thus, the ALJ concluded that Mr. Martinez has not been under a disability as defined in the Social Security Act from May 30, 2019, through October 5, 2022. (Tr. 30.)

## V.  LAW AND ANALYSIS

### A.  <u>Standard of Review</u>

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v.*

*Comm'r of Soc. Sec.*, 615 F. App. 315, 320 (6th Cir. 2015) (quoting *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011)); *see also* 42 U.S.C. § 405(g). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently[.]" *Cutlip*, 25 F.3d at 286; *Kinsella v. Schweiker*, 708 F.2d 1058, 1059-60 (6th Cir. 1983).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether the Commissioner applied proper legal standards. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.*, *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) (alteration in original)).

**B.  Standard for Disability**

The Social Security regulations outline a five-step sequential evaluation process that the ALJ must use in determining whether a claimant is disabled: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of his RFC; and (5) if not, whether, based on the claimant's age, education, and work experience, he can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642-43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that he is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in Steps One through Four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the RFC to perform available work in the national economy. *Id*.

**C.  Analysis**

> **1.  *The ALJ complied with the Drummond/Earley standard by giving Mr. Martinez's application a fresh look.***

Mr. Martinez argues that the ALJ erred by misapplying the Sixth Circuit's *Drummond* decision in his evaluation of his impairment. Specifically, Mr. Martinez contends that "the ALJ adopted the RFC findings of the prior ALJ" and "erroneously failed to consider any of the new medical evidence when setting forth [the ALJ's] opined limitations." (ECF No. 6, PageID#570.) Additionally, he asserts that the ALJ "erroneously relied on the [s]tate [a]gency reviewing sources even though they violated the law in this matter and relied on the prior ALJ's findings." (*Id.* at

17

PageID#572.) The Commissioner disagrees. (ECF No. 9, PageID#591-93.) Mr. Martinez's arguments are not well-taken.

In *Drummond v. Commissioner of Social Security*, the Sixth Circuit stated that "[w]hen the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances." 126 F.3d 837, 842 (6th Cir. 1997). However, in *Earley*, the Sixth Circuit clarified that *Drummond* should not be read to hold that an ALJ is always bound by a previous disability determination. 893 F.3d at 932. Rather, "[a]n individual may file a second application—for a new period of time—for all manner of reasons and obtain independent review of it so long as the claimant presents evidence of a change in condition or satisfies a new regulatory threshold." *Id.* Significantly, the *Earley* court noted that "[f]resh review is not blind review. A later administrative law judge may consider what an earlier judge did if for no other reason than to strive for consistent decision making." *Id.* at 934; *see Greger v. Comm'r of Soc. Sec.*, No. 4:21-CV-2327, 2023 WL 414554, at *5 (N.D. Ohio Jan. 26, 2023) ("*Earley* requires that the ALJ give the case a 'fresh look,' and specifically instructs the ALJ that the prior ALJ's findings cannot be ignored in reviewing the second application.'").

Mr. Martinez incorrectly asserts that the ALJ adopted the prior ALJ's RFC findings and failed to consider any of the new medical evidence in making his RFC determination. Rather, the ALJ here applied the correct legal standard by reviewing and considering the prior decision related to Mr. Martinez's first application without being bound to it and ultimately adopted an RFC that differed from the prior assessment. Specifically, the ALJ acknowledged Mr. Martinez's first application but noted there were more current records that contained new and material evidence regarding Mr. Martinez's severe impairments. (Tr. 22.) In reaching this finding, the ALJ summarized the new evidence from the unadjudicated period and reached different conclusions

18

than the prior ALJ regarding Mr. Martinez's functioning. (Tr. 22-28.) With respect to Mr. Martinez's current claim, the ALJ found Mr. Martinez's depression and anxiety to be severe impairments; these conditions were determined to be non-severe in the 2019 decision. (Tr. 19.) As a result, the ALJ's RFC determination included new mental limitations ("can understand, remember, and carry out simple instructions") and additional manipulative limitations ("occasionally reach in front and laterally with the right non-domination upper extremity and frequently with the left") that were not present in the ALJ's prior 2019 decision. (*Compare* Tr. 19, 22 *with* Tr. 79, 82.)

Mr. Martinez's related argument that the ALJ improperly relied on the state agency opinions "even though they violated the law in this matter and relied on the prior ALJ's findings" is unpersuasive. (ECF No. 6, PageID#572.) As the Commissioner correctly notes, there is nothing per se impermissible about adopting the findings of a prior decision where those findings remain supported by the current record. *See Earley*, 893 F.3d at 933 ("[A]bsent new and additional evidence, the first [ALJ's] findings are a legitimate, albeit not binding, consideration in reviewing a second application."). And as stated above, the ALJ did not ignore the new evidence. In fact, the ALJ's decision reflects that he considered Mr. Martinez's new evidence. (Tr. 22-28.) Regardless, the ALJ did not find the state agency opinions fully persuasive. Notably, the state agency medical consultant and psychological consultant *did not adopt* the prior RFC finding at the reconsideration level. (Tr. 27; *see* Tr. 119-22.) And even then, the ALJ only found the state agency findings "somewhat persuasive," and his RFC finding ultimately differed not just from the prior ALJ's finding but also from the state agency findings. (Tr. 27); *see Wahlert v. Comm'r of Soc. Sec.*, No. 5:22-cv-1324, 2023 WL 4417397, at *4 n.4 (N.D. Ohio July 10, 2023) (refuting plaintiff's contention that the ALJ erred by adopting the state agency opinions who allegedly adopted the

19

prior ALJ's RFC because the ALJ's new RFC was more expansive than prior RFC). Mr. Martinez's argument therefore lacks merit. Accordingly, I recommend that the Court reject this assignment of error.

### 2.  *The ALJ properly evaluated Dr. Naderer's opinions.*

Mr. Martinez contends that the ALJ improperly evaluated Dr. Naderer's opinions regarding Mr. Martinez's physical and mental impairments. (ECF No. 6, PageID#573-76.) The Commissioner disagrees. (ECF No. 9, PageID#593-95.) Mr. Martinez's arguments are not well-taken.

At Step Four of the sequential evaluation, the ALJ must determine a claimant's RFC after considering all the medical and other evidence in the record. 20 C.F.R. § 404.1520(e). In doing so, the ALJ is required to "articulate how she considered the medical opinions and prior administrative medical findings." 20 C.F.R. § 404.1520c(a). At a minimum, the ALJ must explain how he considered the supportability and consistency of a source's medical opinion(s), but generally is not required to discuss other factors. 20 C.F.R. § 404.1520c(b)(2). According to the regulations, the more consistent a medical opinion is with the evidence from other medical and nonmedical sources, the more persuasive the medical opinion will be. This is the consistency standard. And the regulation specifies that the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion, the more persuasive the medical opinion will be. This is the supportability standard. *See* 20 C.F.R. § 404.1520(c)(1)-(2).

As discussed in more detail above, Dr. Naderer completed a Mental Impairment Questionnaire in August 2021 where he indicated that Mr. Martinez's anxiety left him with either no useful ability to function or an inability to meet competitive standards in several areas of mental

functioning. (Tr. 490-91.) Additionally, Dr. Naderer opined that Mr. Martinez would be off task 80% of the workday and absent 5 to 6 days. (Tr. 491.) And in March 2022, Dr. Naderer completed a Physical Medical Source Statement where he opined that Mr. Martinez's cervical spondylosis and pain-related anxiety made him incapable of even low stress work, would cause him to be off task 25 percent or more, and miss more than four days of work a month. (Tr. 473-76.)

The ALJ did not find these opinions to be consistent with the record. (Tr. 25-26.) The ALJ appropriately articulated the supportability and consistency of Dr. Naderer's Physical Medical Source Statement. As to supportability, the ALJ agreed that Mr. Martinez's cervical spondylosis was supported by an MRI but also noted that Mr. Martinez had "okay" mobility, could go outside alone, and reported that he could drive, cook, clean, and perform "dad duties" for his son. (Tr. 26; *see* Tr. 268, 395, 506.) The ALJ also observed that Mr. Martinez reported being able to walk up to a quarter mile and sit up to one hour and stand up to one hour. (Tr. 508.)

As to consistency, the ALJ noted that Dr. Naderer's opinions were consistent with the records to the extent the records that documented reduced range of motion, but also observed that physical therapy had helped with his strength. (Tr. 26; *see, e.g.*, Tr. 412.) Although the ALJ limited to Mr. Martinez to work at the light exertional level with additional restrictions related to his upper and lower extremities, the ALJ did not find Dr. Naderer's off-task limitation consistent with the record. (Tr. 26.) Specifically, the ALJ observed that Mr. Martinez reported inconsistent activities at his consultative examination such as being able to drive, doing laundry, performing household chores, and doing "dad duties" for his son. (Tr. 26; *see* Tr. 268, 395, 506.)

The ALJ also articulated the supportability and consistency of Dr. Naderer's Mental Impairment Questionnaire. Regarding supportability, the ALJ observed that Dr. Naderer's opinions were not supported by the treatment notes reflecting that Mr. Martinez reported that

21

medications were helpful and his anxiety was stable/controlled. (Tr. 25; *see, e.g.*, Tr. 412-13, 484.) Regarding consistency, the ALJ pointed to Mr. Martinez's consultative mental examination where Mr. Martinez only appeared mildly anxious, generally performed well on testing, and denied difficulty getting along with others. (Tr. 26; *see* Tr. 395-98.)

Mr. Martinez fails to address the ALJ's stated reasons for finding specific limitations from Dr. Naderer unpersuasive. Rather, Mr. Martinez merely points to evidence that, in his interpretation, rendered Dr. Naderer's opined limitations supported by and consistent with the record. But this approach does not satisfy the substantial evidence standard nor establish a basis for remand. That is because "[e]ven if evidence could support another conclusion, the decision of the [ALJ] must stand if the evidence could reasonably support the conclusion." *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). The Commissioner enjoys a "zone of choice" within which to decide cases without risking being second-guessed by a court. *Mullen*, 800 F.2d at 545 (citing *Baker v. Heckler*, 730 F.2d 1147, 1149 (8th Cir. 1984)). Accordingly, I recommend that the Court reject this assignment of error.

### 3. *The ALJ accounted for Mr. Martinez's limitations that were supported by the record.*

Finally, Mr. Martinez broadly alleges that the ALJ erred in finding him capable of the standing/walking requirements for work at the light exertional level. (ECF No. 6, PageID#577-80.) Although not entirely clear, Mr. Martinez appears to argue that the ALJ should have given more weight to his symptom testimony. (*See id.* at PageID#579.) The Commissioner responds that the ALJ reasonably explained why he did not fully credit Mr. Martinez's subjective complaints. (ECF No. 9, PageID#595-96.) The Commissioner's arguments are well-taken.

Evaluating an individual's subjective symptoms is a two-step process. SSR 16-3p, 2017 WL 5180304, at *3. First, the ALJ must consider whether the individual has a medically

determinable impairment that could reasonably be expected to produce the alleged symptoms. *Id.* The ALJ must then evaluate the intensity and persistence of the individual's symptoms and determine the extent to which they limit the individual's ability to perform work-related activities. *Id.*

At the second step, the ALJ may consider evidence directly from the claimant, or gleaned from other medical and non-medical sources (such as family and friends). *Id.* An ALJ must consider all evidence in the record to evaluate the limiting effects of the claimant's symptoms, including the daily activities, the nature of the alleged symptoms, efforts made to alleviate the symptoms, the type and efficacy of treatments, and other factors regarding the claimant's functional limitations. *Avery v. Comm'r of Soc. Sec.*, No. 1:19-CV-1963, 2020 WL 2496917, at *11 (N.D. Ohio May 14, 2020). The ALJ must also determine the "extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record." *Id.* An ALJ is not required to accept a claimant's subjective complaints, *Jones v. Comm'r of Soc. Sec.*, 336 F. 3d 469, 476 (6th Cir. 2003), and need not "make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts." *Kornecky v. Comm'r of Soc. Sec.,* 167 F. App'x 496, 508 (6th Cir. 2006). The regulations do, however, require the ALJ to evaluate a claimant's symptoms, and the explanation must be "sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Rogers*, 486 F.3d at 248; *see also* SSR 16-3p, 2017 WL 5180304, at *10.

The ALJ does not need to use any "magic words," so long as it clear from the decision as a whole why the ALJ reached a specific conclusion. *See Christian v. Comm'r of Soc. Sec.*, No. 3:20-CV-01617-JDG, 2021 WL 3410430, at *17 (N.D. Ohio Aug. 4, 2021). The ALJ's evaluation

of subjective evidence receives great deference from a reviewing court. *Baumhower v. Comm'r of Soc. Sec.*, No. 3:18-CV-0098, 2019 WL 1282105, at *2 (N.D. Ohio Mar. 20, 2019). Absent compelling reason, a court may not disturb the ALJ's analysis of the claimant's subjective complaints, and the conclusions drawn from it. *Id.* (internal quotations and citations omitted).

In support of his argument, Mr. Martinez points his own hearing testimony regarding numbness, panic attacks, arm difficulties, and vertigo. (ECF No. 6, PageID#579 (citing Tr. 48-49, 50-52, 55, 60.)) An ALJ is not required to accept a claimant's subjective symptom complaints and may properly discount the claimant's testimony about his symptoms when it is inconsistent with the objective medical and other evidence. *Smith v. Comm'r of Soc. Sec.*, No. 5:17-CV-2666, 2018 WL 6732875, at *14 (N.D. Ohio Nov. 15, 2018*), report and recommendation adopted sub nom. Smith v. Berryhill¸* 2019 WL 696991 (N.D. Ohio Feb. 20, 2019). Mr. Martinez fails to establish that the ALJ's decision should be reversed merely because the ALJ did not credit his subjective complaints in crafting the RFC, especially when the ALJ assessed those complaints along with the objective medical evidence, treatment history, response to treatment, and medical opinions in the record. (*See generally* Tr. 22-28.)

Here, while the ALJ did not deny that Mr. Martinez's severe physical impairments caused him functional limitations, the ALJ did not agree that they were as limiting as Mr. Martinez alleged. (Tr. 23.) In reaching this conclusion, the ALJ discussed how physical therapy resulted in some symptom alleviation (Tr. 23-24; *see* Tr. 362, 373, 412, 482, 486), and medications helped with Mr. Martinez's pain. (Tr. 24; *see* Tr. 488). *See* 20 C.F.R. § 404.1529(c)(3)(iv) (ALJ should consider "type, dosage, effectiveness, and side effects of any medication [an individual] take[s] or has taken to alleviate [his] pain or other symptoms"); 20 C.F.R. § 404.1529(c)(3)(v) (ALJ should consider "treatment, other medication, [an individual] receives or ha[s] received for relief of [his]

24

pain or other symptoms"). The ALJ also discussed Mr. Martinez's reports that he was able to stay active and complete his activities of daily living. (Tr. 23-24, 26; *see* Tr 395, 420, 422, 506); *see* 20 C.F.R. § 404.1529(c)(3)(1); *see also Temples v. Comm'r of Soc. Sec.*, 515 F. App'x 460, 462 (6th Cir. 2013) (stating that an ALJ properly considered a claimant's ability to perform day-to-day activities in determining whether his testimony regarding his pain was credible). Finally, the ALJ also pointed to the state agency opinions concluding that Mr. Martinez can stand and/or walk about six hours in an eight-hour workday. (Tr. 27.) An ALJ's consideration of state agency opinions is relevant to an ALJ's assessment of a claimant's subjective complaints. *See Benson v. Colvin*, No. 3:13 CV 67, 2013 WL 5797747, at *14 (N.D. Ohio Oct. 28, 2013) ("The Court finds the ALJ did not improperly assess [the claimant's] credibility…. As the ALJ correctly notes, state agency physician Bacalla and ME Gatens both concluded Benson was capable of a limited range of light exertional work."); *Sittinger v. Comm'r of Soc.*, No. 1:22-CV-01927-BYP, 2023 WL 6219412, at *13 (N.D. Ohio Sept. 7, 2023), *report and recommendation adopted sub nom. Sittinger v. Comm'r of Soc. Sec. Admin.*, 2023 WL 6214530 (N.D. Ohio Sept. 25, 2023) ("An RFC determination that is supported by the medical opinions of state agency physicians is generally supported by substantial evidence.").

Here, the ALJ assessed the entire record and deter,omes that additional limitations were not warranted. (Tr. 27.) Mr. Martinez disagrees and cites evidence that he contends warrants further limitations. But his disagreement does not establish a basis for remand. An ALJ's credibility assessment "must be accorded great weight and deference." *Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 442 (6th Cir. 2017) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). This is so especially where, as here, the ALJ provided reasons supported by substantial evidence in explaining why Mr. Martinez's allegations were not consistent with the

25

record. The Commissioner's findings "are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion." *White*, 572 F. 3d at 281 (quoting *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1995)). And the Commissioner enjoys a "zone of choice" within which to decide cases without risking being second-guessed by a court. *Mullen*, 800 F.2d at 545 (citing *Baker*, 730 F.2d at 1150)). As detailed above, the ALJ assessed the record and offered substantial evidence for why he discounted Mr. Martinez's assertion that he cannot stand the requisite six hours for light work. Accordingly, I recommend that the Court reject this assignment of error.

## VI.    RECOMMENDATION

Based on the foregoing, I RECOMMEND that the Court AFFIRM the Commissioner's final decision.

Dated: July 17, 2024                                   */s Jennifer Dowdell Armstrong*
                                                       Jennifer Dowdell Armstrong
                                                       U.S. Magistrate Judge

## VII.    NOTICE TO PARTIES REGARDING OBJECTIONS

Local Rule 72.3(b) of this Court provides:

**Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge,

making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530-531 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).